UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

FIFTH THIRD BANK                                                             PLAINTIFFS

v.                                                                  NO. 3:12-CV-00603-CRS

R. STEPHEN CANFIELD and
PENNY LOVE                                                                   DEFENDANTS

**MEMORANDUM OPINION**

This case involves various claims made by Plaintiff and Counter Defendant Fifth Third Bank ("Fifth Third") against Defendant and Counter Plaintiffs R. Stephen Canfield ("Canfield") and Penny Love ("Love") (collectively, "Defendants") in connection with a promissory note and mortgage. Defendants have filed ten counterclaims against Fifth Third. (DN 20). Fifth Third has moved for partial summary judgment on Canfield's liability on the note and mortgage and also seeks dismissal of Defendants' counterclaims. (DN 24). Defendants have moved for leave to file an amended answer and counterclaims. (DN 29). Having been fully briefed, these matters are now ripe for adjudication.

For the reasons set forth below, the court will grant Fifth Third's motion for partial summary judgment (DN 24) and deny Defendants' motion for leave to file an amended answer and counterclaims (DN 29).

**BACKGROUND**

The following facts are undisputed. Fifth Third, an Ohio banking corporation, is the holder and owner of several notes and loans made to Canfield. Defendants are spouses who

reside in Kentucky. On April 19, 2006, Canfield executed a revolving promissory note[1] with Fifth Third in the maximum principal amount of $1 million. (DN 1-1). This line of credit was unsecured, but Canfield retained an option to renew it annually. Canfield exercised this renewal option in 2007 and 2008. (DNs 1-2, 1-3). In 2009, Canfield granted Fifth Third a mortgage on his personal residence to securitize the note.[2] Canfield, along with Love, executed an Open-End Mortgage and Security Agreement ("Mortgage"), which Fifth Third recorded on February 18, 2009. (DN 1-4). Canfield also executed a renewed note in the maximum principal amount of $916,224.37, which was secured by the Mortgage. (DN 1-5). Canfield renewed the note in 2010. (DN 1-6).

Canfield and Fifth Third entered into an Extension Agreement on December 22, 2011, pursuant to which Canfield agreed to execute a renewal promissory note[3] in the principal amount of $862,215.89 with a maturity date of April 5, 2012 ("2011 Note"). (DNs 1-7, 1-8). Canfield also agreed to list the mortgaged real property for sale with a real estate broker. (DN 1-7, at ¶ 4). When the 2011 Note matured on April 5, 2012, Canfield did not pay any of the sums due, nor did he seek to extend or renew the note. In a letter sent on September 13, 2012, Fifth Third advised Canfield that he was in default on the 2011 Note and demanded payment in full by September 23, 2012.

Canfield admits that he executed the notes, the Extension Agreement, and the Mortgage (collectively, "Loan Documents"), but he contends that Fifth Third made fraudulent statements

---

[1] All references to the "note" include the promissory note as originally executed in 2006 and all subsequent renewals and extensions thereto, which are substantially similar in form.
[2] Canfield alleges that Fifth Third refused to renew the note until he agreed to execute the mortgage. (DN 30, at p. 2).
[3] The 2011 renewal note revives the terms of the prior renewed notes and provides for payment of interest in monthly installments due on the first day of the month, in addition to payment of all outstanding principal and accrued interest in full on the maturity date. (DN 1-8, at ¶ 3).

that induced him to enter into these agreements.[4] In his counterclaim, Canfield alleges that the following exchanges occurred:

1. In 2006, Fifth Third offered Canfield an unsecured $1 million line of credit. (DN 20, at ¶ 3–4).

2. In 2008, Canfield agreed to give Fifth Third a mortgage on his personal residence in exchange for Fifth Third's oral promise that the note would remain interest-only until Canfield could sell the property to pay off the principal. (DN 20, at ¶ 7–14).

3. Fifth Third agreed that there would be no established time by which Canfield had to pay down the principal balance of the note. (DN 20, at ¶ 11).

4. In 2012, Fifth Third refused to renew the note unless Canfield paid $100,000 toward the principal. (DN 20, at ¶ 19–21). Fifth Third then claimed that the line of credit had "matured" and demanded all outstanding principal due under the note. (DN 20, at ¶ 20–23).

Canfield also alleges that Fifth Third fraudulently induced him to execute the Extension Agreement by promising that it would not foreclose on his home and would let him renew the interest-only loan until he sold his home. (DN 30, at p. 3). Fifth Third denies that any such exchanges or oral promises were made. (DN 24, at p. 1–2).

Fifth Third filed this action in this court on September 25, 2012 against Defendants[5] seeking the following relief: (1) a judgment against Canfield for all amounts owed pursuant to the 2011 Note and the Mortgage; (2) a judgment that Fifth Third has a valid and enforceable mortgage lien on the real property; and (3) enforcement of Fifth Third's mortgage lien.

---

[4] In their Answer and Counterclaim, Defendants allege that Phil McHugh, the former president of Fifth Third, made several of these allegedly false statements and promises. (DN 20). According to Defendants, Robin Windler—Canfield's private banker—was also present during many of these conversations. (DN 20, at ¶ 12).

[5] The complaint also named the following parties as defendants due to their possible interests in the mortgaged real property: Branch Banking and Trust, Mortgage Electronic Registration Systems, Inc., and Republic Bank & Trust Company. (DN 1).

Defendants filed an Answer and Counterclaim in which they raised several affirmative defenses and the following counterclaims: (1) breach of contract; (2) breach of good faith and fair dealing; (3) negligence; (4) fraudulent inducement; (5) tortious interference with prospective business advantage; (6) promissory/equitable estoppel; (7) declaratory judgment; (8) abuse of process; (9) punitive damages; and (10) injunctive relief. (DN 20). Fifth Third then filed a motion for partial summary judgment seeking (1) a judgment against Canfield for his liability to Fifth Third on the 2011 Note and the Mortgage, and (2) dismissal of Defendants' counterclaims. (DN 24). Defendants responded to Fifth Third's motion (DN 30) and filed a motion for leave to file an amended answer and counterclaims (DN 29).

## DISCUSSION

### I. Fifth Third's Motion for Partial Summary Judgment

Fifth Third contends that it is entitled to partial summary judgment as to Canfield's liability on the 2011 Note and the Mortgage and as to Defendants' counterclaims because there is no genuine factual dispute that Canfield breached his contractual obligations. (DN 24, at p. 1–2). Canfield acknowledges that he entered into the Loan Documents, but he disputes any allegations of breach on his part and raises several defenses to his liability on the Loan Documents. (DN 30, at p. 1).

#### A. Standard

A court may grant a motion for summary judgment if it finds that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying the portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving

party satisfies this burden, the nonmoving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986).

The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp*., 303 F.2d 425 (6th Cir. 1962). However, the nonmoving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party cannot rely upon the assertions in its pleadings; rather that party must come forward with probative evidence, such as sworn affidavits, to support its claims. *Celotex*, 477 U.S. at 324. It must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252.

**B. Timeliness of Fifth Third's Motion**

Defendants' response states that Fifth Third's motion is premature, and they ask the court to give them an opportunity to conduct discovery. (DN 30, at p. 1). Pursuant to Federal Rule of Civil Procedure 56(d)(2), a court may allow parties to engage in discovery prior to ruling on a motion for summary judgment if "a nonmovant shows by affidavit . . . [that] it cannot present facts essential to justify its opposition[.]" Fed. R. Civ. P. 56(d)(2). The Sixth Circuit has interpreted Rule 56(d)(2) as requiring a party opposing a summary judgment motion to file an affidavit that "indicate[s] to the district court its need for discovery, what material facts it hopes

to uncover, and why it has not previously discovered the information." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000). If the nonmoving party makes this showing, the court may: "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). Additionally, a court may "stay discovery until preliminary questions that may dispose of the case are determined. Limitations on pretrial discovery are appropriate where claims may be dismissed based on legal determinations that could not have been altered by any further discovery." *Gettings v. Building Laborers Local 310*, 349 F.3d 300, 304 (6th Cir. 2003) (citations and internal quotations omitted).

Canfield submitted an affidavit with his motion. (DN 30-1). In considering Canfield's affidavit, we must determine whether it raises a genuine issue of material fact such that a grant of summary judgment would be improper. The overriding purpose of Canfield's affidavit is to establish his defense of fraudulent inducement. "Where the allegation is fraud, summary judgment may be granted unless there is sufficient probative evidence produced which, if believed, would clearly and convincingly establish fraud." *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 946 (6th Cir. 1990) (overruled on other grounds). In paragraphs 3 and 9 of the affidavit, Canfield sets forth the allegedly fraudulent representations that Fifth Third made to him regarding the Loan Documents. (DN 30-1).[6] However, the affidavit fails to identify what material facts Canfield hopes to uncover in the course of further discovery, other than electronic

---

[6] According to Canfield, Fifth Third represented that the note would remain an annually renewed, interest-only loan:
> In renewing my line of credit with Fifth Third and agreeing to provide a mortgage as security after Fifth Third induced my business by offering an unsecured, interest-only, annually renewed long term line of credit, I relied upon representations made by then-President of Fifth Third, Phil McHugh, that this would remain a long-term, annually renewed interest-only loan.

(DN 30-1, at ¶ 3). Paragraph 9 includes a similar representation: "Phil McHugh represented that I would only be required to pay interest on the line of credit and that there was no set time frame in which the principal amount had to be paid back but rather the notes would be annually renewed . . . ." (DN 30-1, at ¶ 9).

communications between himself and other parties.[7]  Because Canfield was a party to the communications he seeks to discover, he should already have access to any information that would support his claims.  Furthermore, is it unclear how further discovery would prove helpful to the survival of Canfield's claims against Fifth Third.  Thus, Fifth Third's motion for summary judgment is not premature.

### C. Canfield's Liability on the Note and the Mortgage

Fifth Third contends that it is entitled to judgment against Canfield because Canfield is in breach of the Loan Documents.  Both Fifth Third and Canfield admit that they executed the Loan Documents. (DNs 1, 20).  Canfield originally executed the note in 2006 and executed renewals of the note in 2007, 2008, 2009, 2010, and 2011.  Additionally, Canfield restated and reaffirmed the provisions of the note and its subsequent renewals in the Extension Agreement. (DN 1-7, at ¶ 1).  In 2011, Canfield executed a renewed note that would mature on April 5, 2012. (DN 1-8, at ¶ 3).  Each of the Loan Documents stated that the principal would be due on a certain date (unless the parties agreed to extend or renew the note) and explicitly stated that non-payment of the principal on the maturity date constituted an event of default.  Thus, Canfield was on notice that failure to pay the principal on the maturity date would result in default of the 2011 Note.  Pursuant to the terms of the Loan Documents, Canfield was in breach on April 5, 2012 when he failed to pay the principal of the 2011 Note in full.[8]  As of December 1, 2012, Canfield owed

---

[7] *See* DN 30-1, at ¶ 10 ("At a minimum, my counsel and I need an opportunity to conduct written discovery, such as propounding requests for production of documents to obtain emails between Phil McHugh and/or Robin Windler and me, and to conduct depositions of Phil McHugh and Robin Windler.").

[8] The 2011 Note grants Fifth Third a right to payment of the principal upon the maturity date:
> Borrower shall repay this Note by making monthly payments of all accrued but unpaid interest beginning on the 1st day of December, 2011, and continuing on the 1st day of each month thereafter, all until April 5, 2012 (the "Maturity Date"), at which time all outstanding principal and accrued interest shall be due and payable in full.

(DN 1-8, at ¶ 3). The Mortgage adopts the terms of the note and states that "[a]n Event of Default occurs under any of the Loan Documents or in any amendments, modifications or restatements . . . ." (DN 1-4, at ¶ 4.1).

Fifth Third $884,961.50 as a result of his breach of the Loan Documents, exclusive of attorney fees, collection costs, and future interest. (DN 24-1, at p. 8).

Fifth Third has established that Canfield breached the terms of the Loan Documents and that it has suffered damages as a result. Canfield hopes to combat Fifth Third's claims by introducing statements that Fifth Third allegedly made which contradict the terms of the written Loan Documents. Defendants have also brought several counterclaims against Fifth Third. (DN 20). Love does not have any claims beyond her claim concerning the Mortgage, because the Mortgage is the only document to which she is a signatory.

### D. Canfield's Counterclaims for Breach of Contract and Fraudulent Inducement

We will first address Canfield's claims for breach of contract and fraudulent inducement. Canfield contends that he and Fifth Third orally agreed that the note would be interest-only and there would be no set time at which the principal had to be paid. (DN 20, at ¶ 30). Canfield believes that Fifth Third breached this oral contract by requiring Canfield to pay the principal in full when the 2011 Note matured on April 5, 2012. (DN 20, at ¶ 31). Canfield also alleges that Fifth Third made these statements to fraudulently induce him to enter into the loan agreements, and he relied on these statements to his detriment.

Fifth Third argues that Canfield's counterclaims should be dismissed because the oral statements which Canfield seeks to introduce to support his claims directly conflict with the express terms of the 2011 Note and the Mortgage.[9] The introduction of extrinsic oral statements to contradict the express written terms of the integrated Loan Documents would, according to Fifth Third, violate both the parol evidence rule and the statute of frauds.

---

[9] Fifth Third also seeks to dismiss the counterclaims on the grounds that Canfield released all claims against Fifth Third in the Extension Agreement. (DN 1-7, at ¶9). Because we dismiss the counterclaims on other grounds, we will not address the validity of the release.

Fifth Third first contends that the Loan Documents are integrated writings that cannot be varied by parol evidence.[10] Kentucky courts have stated the parol evidence rule as follows:

> When two parties have made a contract and have expressed it in writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.

*Johnson v. Dalton, Ky.*, 318 S.W.2d 415, 417 (Ky. 1958) (internal citations omitted). An exception to the rule applies, and parol evidence is admissible, if the parol evidence is used to prove fraudulent inducement to enter into the agreement. *Bryant v. Troutman*, 287 S.W.2d 918, 920 (Ky. 1956).

Second, Fifth Third argues that the statute of frauds requires that any amendment to the Loan Documents be in writing, and that no such writing exists to allow for an amendment. Subsection 9 of Kentucky's statute of frauds states that promises to lend money are only enforceable if made in writing:

> No action shall be brought to charge any person
>
> (9) Upon any promise, contract, agreement, undertaking, or commitment to loan money, to grant, extend or renew credit, or make any financial accommodation to establish or assist a business enterprise or an existing business enterprise including, but not limited to the purchase of realty or real property . . . ;
>
> unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged therewith, or by his authorized agent.

---

[10] The Loan Documents contain language indicating that they are integrated documents. The note contains the following language:
> ENTIRE AGREEMENT. Borrower agrees that there are no conditions or understandings which are not expressed in this Note and the documents referred to herein.

(DN 1-1, at ¶ 9). The Mortgage provides:
> Complete Agreement; Counterparts. This Mortgage and the Exhibits are the complete agreement of the parties hereto and supersede all previous understandings relating to the subject matter hereof. This Mortgage may be amended only by an instrument in writing which explicitly states that it amends this Mortgage, and is signed by the party against whom enforcement of the amendment is sought.

(DN 1-4, at ¶ 6.7).

KRS § 371.010(9).  However, oral statements that fall within the scope of the statute of frauds are admissible if introduced to prove fraud in the inducement to enter a written agreement. *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 471 (Ky. 1999).

Pursuant to the provisions of both the parol evidence rule and statute of frauds, any amendment to the Loan Documents must be made in a signed writing with terms consistent with the parties' original written agreement.  However, an amendment need not be in a signed writing if it was made to fraudulently induce Canfield to execute the Loan Documents.  Canfield urges the court to accept his averment that Fifth Third promised that the note would be annually renewing and only require payments of interest.  Even accepting his allegations as true, it is not clear that Canfield could properly introduce the allegedly fraudulent statements to alter the terms of the written Loan Documents.  Canfield has neither pled the elements of fraud nor met the pleading requirements of Federal Rule of Civil Procedure 9(b).

Under Kentucky law, in order to establish a claim for fraud or fraudulent inducement, a plaintiff must prove: (1) a material misrepresentation; (2) which is false; (3) which was known to be false, or made recklessly; (4) which was made with an inducement to be acted upon; (5) which is acted upon in reliance thereon; and (6) which causes injury.  *See United Parcel Serv. Co.*, 996 S.W.2d at 468 (citation omitted).  Rule 9(b) states that a party alleging fraud "must state with particularity the circumstances constituting fraud . . . ."  Fed. R. Civ. P. 9(b).  The Sixth Circuit has interpreted Rule 9(b) to require a party asserting fraud to "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud."  *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993) (citations omitted).

Even if we take them as true, Canfield's vague and general allegations of fraud fall short of Rule 9(b)'s particularity requirement. Although he states that Fifth Third "induced" him to execute the Loan Documents by falsely promising not to seek payment of the principal or foreclose upon his home, Canfield fails to identify any specific evidence that will overcome the express provisions of the Loan Documents. Canfield has not supplied the court with any evidence to support his claim that Fifth Third made these statements, nor do the bare allegations contained in his affidavit give the court reason to believe that these alleged statements will be unearthed during discovery. Thus, Canfield's counterclaim for fraud fails because he has not pled the elements of fraud or met the pleading requirements of Rule 9(b). Consequently, Canfield's counterclaim for breach of contract fails because he has not sufficiently alleged the existence of fraud to take the oral statement outside the scope of the parol evidence rule and the statute of frauds. Additionally, Canfield's failure to properly plead the elements of fraud prevents the introduction of any statements supposedly made by Fifth Third after the execution of the Loan Documents.

Because Canfield cannot introduce oral statements to contradict the Loan Documents, the express provisions of the Loan Documents are controlling. Accordingly, we find that Fifth Third is entitled to judgment against Canfield for his liability on both the 2011 Note and the Mortgage and we will dismiss by separate order Canfield's counterclaims for breach of contract and fraudulent inducement. We dispose of the remainder of Canfield's counterclaims as insufficient in light of the express terms of the 2011 Note and the Mortgage.

We previously determined that Love has no enforceable claims under the 2011 Note. However, to the extent she could establish otherwise, she stands in no different position from her husband. Thus, our decision on the merits binds Love to the same extent it binds Canfield. But

because Defendants' declaratory judgment claim arises out of issues unrelated to the alleged fraud, we will address it separately.

**E. Defendants' Counterclaim Seeking a Declaratory Judgment**

Defendants are co-owners of the mortgaged property and they co-signed the Mortgage in 2009. (DN 1-4). In their Answer and Counterclaim, Defendants seek a declaratory judgment that the Mortgage be adjudged null and void with respect to Love's interests in the property. (DN 20, at ¶ 72). Defendants contend that Love should not be subject to the Mortgage's provisions because she did not receive consideration for executing the Mortgage. (DN 20, at ¶ 71).

The Mortgage document recites that Love's conveyance was for "good and valuable consideration." (DN 1-4, at p. 1). Kentucky courts define the term consideration as "[a] benefit to the party promising, or a loss or detriment to the party to whom the promise is made." *Phillips v. Phillips*, 171 S.W.2d 458, 464 (Ky. 1943). *See also Snyder v. Snyder*, 235 S.W. 743, 746 (Ky. 1921) ("A valuable consideration may be some benefit conferred upon the party by whom the promise is made, or upon a third party at his instance or request, or some detriment sustained, at the instance of the party promising, by the party in whose favor the promise is made."). Additionally, consideration "need not even involve a benefit to the promisor; it is sufficient if the benefit is derived solely by a third person or consists only of detriment to the person to whom the promise is made." *Whitaker Bank, Inc. v. First Nat'l Bank & Trust of London*, No. 2007-CA-000688-MR, 2008 WL 3165251, at *2 (Ky. Ct. App. Aug. 8, 2008) (citing 17A Am. Jur. 2d Contracts § 117).

Love did not personally benefit by executing the Mortgage, but her signature was beneficial to Canfield, her husband. By executing the Mortgage, Love ensured that Fifth Third would renew Canfield's note for another year and not seek immediate payment of the note in

full. Therefore, we conclude that there was adequate consideration to support the Mortgage and accordingly deny Love's request to adjudge the Mortgage null and void with respect to her interest in the mortgaged real property.

## II. Defendants' Motion for Leave to Amend

Defendants have filed a motion for leave to file a proposed supplemental and amended answer and counterclaims ("Amended Answer"). The Amended Answer changes the wording of several of their counterclaims, deletes the promissory/equitable estoppel counterclaim, and adds an additional counterclaim for fraudulent omission. (DN 29). Defendants contend that their motion for leave to file the Amended Answer should be granted so that they can "clarify" some of their claims against Fifth Third. (DN 29, at p. 2). Fifth Third asks that the court deny Defendants' motion because the proposed amendment would be futile. (DN 37, at p. 2).

After a responsive pleading has been served, parties may only amend their pleadings with leave of the court or with the opposing party's written consent. Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). A district court should freely grant a party leave to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). When confronted with a motion for leave to amend, a "district court, generally speaking, has considerable discretion in deciding whether to grant" the Rule 15(a)(2) motion. *Leisure Caviar, LLC v. United States Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010). However, a district court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman*, 371 U.S. at 182.

An amendment is "futile" if it could not overcome a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). To survive a 12(b)(6) motion to dismiss, the proposed amendment need only allege facts which, if proved, would entitle Defendants to relief. *Johnson v. City of Detroit*, 446 F.3d 614, 618 (6th Cir. 2006). This is a liberal pleading standard, and the court construes the proposed amendment in a light most favorable to the nonmoving party. *Id.* However, the proposed amendment "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (citations omitted).

In their Amended Answer, Defendants change the wording of several of their factual allegations to clarify their contention that Fifth Third orally promised Canfield that his loan would be long-term, annually rolled-over, and interest-only. (DN 29-2). In addition, Defendants removed the counterclaim seeking promissory/equitable estoppel and added a new counterclaim alleging fraudulent omission. In their fraudulent omission claim, Defendants contend that Fifth Third failed to disclose that its oral representations should be in writing to ensure enforceability. (DN 29-2, at ¶ 52). Defendants also allege that Fifth Third failed to disclose that it would demand payment of the principal due on the loan. (DN 29-2, at ¶ 52). According to Defendants, Fifth Third's failure to disclose these "material facts" induced Canfield to execute the Mortgage in favor of Fifth Third. (DN 29-2, at ¶ 53).

The proposed Amended Answer could not survive a 12(b)(6) motion to dismiss because it fails to allege facts which, if proved, establish the existence of a claim of fraudulent omission. Defendants' proposed claim is substantially similar to their fraudulent inducement claim, which we disposed of in Section I.D for failure to meet the pleading requirements of Rule 9(b). Moreover, most of the Amended Answer's proposed changes are insignificant and do not, by

themselves, entitle Defendants to their requested relief. Therefore, the court must deny Defendants' motion for leave to amend.

## CONCLUSION

For the reasons stated above, we grant Fifth Third's motion for partial summary judgment (DN 24) as to Canfield's liability on the note and mortgage and dismissal of Defendants' counterclaims. Defendants' motion for leave to file an amended answer and counterclaims (DN 29) will be denied.

A separate order will be entered in accordance with this opinion.

November 6, 2013

**Charles R. Simpson III, Senior Judge**
**United States District Court**